[No. B160150. Second Dist., Div. Eight. Feb. 11, 2003.]

In re JASMIN C. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent;
MARIA J., Defendant and Appellant.

---

**COUNSEL**

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and James M. Owens, Deputy County Counsel, for Plaintiff and Respondent.

Law Offices of Kenneth P. Sherman and Phyllis Stricklan for Minors.

---

**OPINION**

**RUBIN, J.**—This appeal raises a single question:[1] May a juvenile court require a nonoffending parent in a Welfare and Institutions Code section 300 proceeding to attend a parenting class when there is no substantial evidence

---

[1]The minors joined in the appellant's opening brief.

that either the parent or the minor would benefit from the counseling?[2] We answer "no."

## FACTUAL AND PROCEDURAL HISTORY

On May 27, 2002, Benito N. (father) picked up his adult stepdaughter, 18-year-old Jessica C., from work. During the drive home, they began to argue about Jessica having a boyfriend, and the argument spilled over from the car into the family home. As matters escalated, Jessica's mother, Maria J. (mother), took Jessica and mother's three other children to a friend's house. Father followed, an altercation ensued, and father punched Jessica in the face, breaking her nose. When 15-year-old Jasmin intervened to protect her sister, father hit Jasmin three times, once in the stomach, slapped her repeatedly and pulled her hair.[3] He also pushed a five-year-old niece.

At some point during the fray, father said that if his wife and children did not leave with him, he would start shooting, or something "bad would happen." Mother intervened, cooled tempers, restrained her husband, and directed that the police be called. Father said he would wait for the police, asked for some water, then changed his mind and left. An hour later, he surrendered to the police and was arrested (and later charged) with assault with a deadly weapon.

Based on these events, the Los Angeles County Department of Children and Family Services (the department) initiated section 300 proceedings on May 30, 2002. Because father was still in custody on that date and had not been transported to court, the trial judge continued the detention hearing until June 4, 2002. The three minors were released to mother, and the court found that it was not in their best interests to live with father.[4] Consequently, certain restrictions were placed on father, and mother was ordered to comply with the orders regarding him.

At the June 4 hearing, father was present with counsel, but remained incarcerated. The court advised him that it had released the children to mother's care and he could not live in the family home. No other conditions were imposed on mother.

At the next hearing on July 9, 2002, the department reported that the children wished to live with mother, that mother wanted to care for the

---

[2]All further undesignated section references are to the Welfare and Institutions Code.

[3]Jasmin is spelled three different ways in the record. We adopt the spelling used in the petition.

[4]The primary victim of father's assault, Jessica, was 18 years old and, hence, not subject to the court's jurisdiction. She lived with her parents before the incident and, it appears, with mother afterwards.

children, "the children appear happy with their mother," and the "children are safe in the home of their mother under the condition that [father] not reside in the home." The social worker recommended, among other things, parenting classes for both parents. The court took no action on the department's report and scheduled an adjudication and contested hearing for July 17. No conditions were imposed on mother.

On July 17, both mother and father personally waived their rights and submitted on the social worker's report. The court found jurisdiction under section 300, placed the minors in the home of mother, and ordered family maintenance services for mother and family reunification services for father, who was permitted department-monitored visits. He was also ordered into parenting classes and to attend 52 weeks of anger management counseling. The minute order also stated: "Next report is to address father's progress in programs; and possibility of terminating family reunification for [father]." As to mother, even though she was described in the petition and minute order as "non-offending," she was ordered to attend parenting education. In contrast to father's order, the court required no reports on mother's progress in such classes.

Only mother appealed.

## DISCUSSION

Mother's sole contention is that there is insufficient evidence to support the order requiring her to attend parenting education classes. On appeal, the juvenile court's findings are subject to review for substantial evidence. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1361-1362 [52 Cal.Rptr.2d 474].) Substantial evidence is any evidence which is of ponderable legal significance but it is not synonymous with *any* evidence; rather it must be "reasonable, credible and of solid value . . . ." (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75 [82 Cal.Rptr.2d 493].)

The juvenile court has wide latitude in making orders necessary for the well-being of a minor. By statute, the court may make "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . ." (§ 362, subd. (a).) However, the same statute limits such orders to those that are designed to eliminate the conditions that brought the minor to the attention of the court. (§ 362, subd. (c).) Our task here is to review the evidence to determine whether it is legally sufficient to support the trial court's implied conclusion that mother's attendance in parenting classes is reasonably necessary to avoid a repetition of father's emotional and physical abuse of the minors. We conclude that no evidence, let alone substantial evidence, supports such a conclusion.

Mother was nonoffending under the petition. She did not abuse her children, fail to protect them, or engage in any other inappropriate behavior. Father's rampage was an isolated incident perpetrated by only him, during which mother immediately interceded, physically restrained and calmed him, and directed another to call the police. From the outset, the social worker recommended custody with mother, and at no time were the children removed from her home.

Respondent relies on four cases to support its contention that the trial court acted within its discretion. None is helpful. In *In re Edward C.* (1981) 126 Cal.App.3d 193 [178 Cal.Rptr. 694], the three minor children were removed from the custody of both parents after a series of beatings by the father. The parents had been through dependency proceedings three times because of the father's brutality. The parents refused to cooperate with the social worker and showed a lack of remorse. Although the father personally inflicted violence on the children, the mother supported this form of discipline. (*Id.* at pp. 205-206.) Counseling for both parents, thus, was warranted. Similarly, the random drug and alcohol testing imposed on the father in *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008 [57 Cal.Rptr.2d 861], was justified by the father's "repeated driving under the influence convictions and positive blood test for methamphetamine . . . ."

The other two cases cited by respondent actually support mother. In *In re Sergio C.* (1999) 70 Cal.App.4th 957, 960 [83 Cal.Rptr.2d 51], although only the mother had abused drugs, a testing order was imposed on the father. The Court of Appeal reversed, holding the mother's unsworn statement to the social worker did not constitute sufficient evidence that the father had a drug problem. Likewise, in *In re Basilio T.* (1992) 4 Cal.App.4th 155, 172 [5 Cal.Rptr.2d 450], the appellate court reversed a drug condition as to both parents that was based on only vague assertions that the mother "behaved somewhat out of the usual and was obsessed with discussing a fortune-making invention . . . ."

At the dispositional hearing here, mother's counsel argued strongly that parenting classes should not be imposed on his client "just because that's something we tend to do to people." In response, the department made no showing and referred to no evidence that supported such a condition, arguing only, "the Department feels she can benefit from a parenting class, especially in light of the fact that the family unit has now been altered and she's caring for the children. Without the father's assistance." The trial court imposed the parenting class condition on mother without making any findings or giving any explanation. Even more troubling, nothing in the record supported the order, which apparently was based on a rote assumption that

mother could not be an effective single parent without parenting classes, something belied by common sense and experience in 21st-century America. We agree with counsel for the children in a brief filed in support of mother that it "is particularly difficult for this family, as it is with hundreds of other families brought to the juvenile court's attention, to pick up the pieces once a parent is made to abruptly move out. To add the unnecessary responsibility of attending a class adds a great deal of stress to an already tragic situation. Issues of finding daycare, taking time off of work and ensuring transportation to the class, can truly strain an intact family, let alone a broken one." Although these sentiments may also describe situations where parenting education is legally justified, no justification was present here.[5]

## DISPOSITION

That part of the order requiring mother to attend and complete a parenting education class is reversed. In all other respects, the order is affirmed.

Cooper, P. J., and Boland, J., concurred.

---

[5]As it was not raised, we do not address whether mother could be compelled to attend conjoint therapeutic counseling sessions with the children as part of a program designed to cope with their adjustment to (1) the events that prompted the filing of the petition, or (2) residing without father; nor do we foreclose the court from reconsidering the parenting class issue upon a future showing of reasonableness. (See *In re Basilio T., supra,* 4 Cal.App.4th at p. 173, fn. 9.)