Filed 9/23/20  In re Xavien D. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re XAVIEN D., a Person Coming Under the Juvenile Court Law. | B302820 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent. <br><br> v. <br><br> BRANDI D., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP06637A) |

APPEAL from orders of the Superior Court of Los Angeles County.  Sabina A. Helton, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel for Plaintiff and Respondent.

Appellant Brandi D. (mother) appeals from the juvenile court's dispositional orders removing her son Xavien (born 2015) from her custody and requiring her to obtain mental health services. We affirm the orders.

## BACKGROUND

### Detention and section 300 petition

In May 2018, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging that mother abused drugs and alcohol, and that Xavien witnessed ongoing and escalating violence between mother and her boyfriend, Ronald C. The referral was deemed inconclusive; however, mother agreed to a safety plan barring her from living with Ronald and prohibiting contact with him. Pursuant to the safety plan, mother and Xavien moved into the home of a maternal aunt.

The Department received another referral in August 2018 for general neglect and emotional abuse of Xavien by mother and Ronald. According to the reporting party, drug paraphernalia was in open view in the home, which was littered with trash and dirty clothes.

Mother told the responding social worker during an August 6, 2018 interview that Ronald had been arrested for violating a condition of his parole prohibiting him from residing with mother or having contact with her. Ronald's parole agent had found a methamphetamine pipe in the home and Ronald admitted using methamphetamine. Mother said she was aware of Ronald's methamphetamine use but claimed he did not do so when she and Xavien were present.

Mother identified Xavien's father as Christian G. (father).[1] A criminal history search showed that father had convictions for inflicting corporal injury on a spouse or cohabitant and for firearm violations.

Ronald's parole agent informed the social worker that Ronald wore a GPS monitor and was considered a member of a dangerous street gang. The parole agent said a no contact order with mother was a condition of Ronald's parole given their history of domestic violence. Ronald was arrested in January 2018 for violating that condition. Ronald was again arrested in August 2018 when the parole agent found methamphetamine and methamphetamine pipes in the home.

Mother's and Xavien's whereabouts became unknown in mid-August 2018. The Department recommended that Xavien be detained at large.

On October 15, 2018, the Department filed a petition on Xavien's behalf under Welfare and Institutions Code section 300, subdivision (b),[2] alleging that mother failed to protect Xavien by allowing Ronald to be under the influence of drugs in the child's presence and to possess drugs and drug paraphernalia in the home within Xavien's access.

Xavien's whereabouts and that of both parents remained unknown at the time of the October 16, 2018 detention hearing at which the juvenile court ordered Xavien detained from parental custody. The juvenile court issued a protective custody warrant

---

[1] Father is not a party to this appeal.

[2] All further statutory references are to the Welfare and Institutions Code.

for Xavien, an arrest warrant for mother, and due diligence searches for both parents.

**Jurisdiction and disposition**

Mother's, father's, and Xavien's whereabouts remained unknown at the time the Department filed its December 2018 jurisdiction/disposition report. Ronald's parole agent informed the Department that Ronald was an active gang member and was considered armed and dangerous. The parole officer reaffirmed that Ronald was prohibited from contacting mother.

In June 2019, the Department reported that Ronald had been arrested on April 17, 2019, near the apartment building where he and mother had last resided. Law enforcement officers subsequently found and arrested mother in the same building. The officers took Xavien into protective custody and released him to the Department.

In its June 2019 detention report, the Department explained the need for Xavien's continued detention because mother presented a flight risk. Mother's whereabouts had been unknown since August 2018, and she had failed to appear at scheduled court hearings or to respond to the Department's attempts to contact her. Maternal aunt Jennifer C. told the Department's social worker on June 20, 2019, that mother had been hiding from the entire family until she telephoned the maternal grandmother from jail.

Mother was present in custody at a June 24, 2019 hearing at which time the juvenile court ordered that Xavien remain detained. Mother informed the juvenile court that father was incarcerated in Orange County, and the court issued a statewide removal order for father's transportation to the next hearing. The court ordered the Department to provide mother with

4

housing referrals and transportation assistance and granted mother monitored visitation.

In its July 2019 jurisdiction/disposition report, the Department reported that both mother and father had criminal histories that included inflicting corporal injury on a spouse or cohabitant. A dependency investigator interviewed father, who was in federal custody, by telephone on July 8, 2019. Father said that mother had a history of drug use and had been unstable most of her life. He said mother had accused him of domestic violence and that he believed domestic violence was an issue in all her relationships. Father said he wanted to be involved in Xavien's life, but mother had not allowed him to do so. Father was scheduled to be released from custody in October 2019.

The Department reinterviewed maternal aunt Jennifer C. by telephone on July 8, 2019. When asked about mother's mental health, the maternal aunt reported that mother became depressed when the social worker told her to avoid contact with her boyfriend. She said mother was scared, crying uncontrollably, and might need therapy.

The social worker met with mother on July 19, 2019, and provided her with copies of the section 300 petition, the Department's reports, the juvenile court's minute orders, and a packet of resources for services including housing, food banks, and programs for parenting and substance abuse. Mother admitted to an incident of domestic violence with father in the past and disclosed she had been sexually molested as a child.

A multidisciplinary assessment team (MAT) report prepared in August 2019 indicated that the Department had referred mother to Tri-City Mental Health Services, where treatment modalities included intensive psychiatric assessment,

5

individual, group, and family therapy, case management services, and housing options.

In a last-minute information for the court filed in September 2019, the Department reported on information it had obtained from the Buena Park Police Department regarding domestic violence between mother and father. In 2013, police officers reported that mother had sustained bruising and swelling around her right eye and cuts and scratches on her chin and neck. Mother told the officers that father had punched her multiple times until she fell to floor and "blacked out." Father was arrested in 2014 for violating a restraining order protecting mother from him and prohibiting him from purchasing firearms.

Mother met with the Department's dependency investigator and social worker on October 3, 2019. She had not enrolled in any services but said she was trying to obtain housing and to enroll in a substance abuse program. The social worker said she could arrange a meeting between mother and a substance abuse coordinator at the Department's office to facilitate mother's enrollment in a drug program. The dependency investigator asked to meet with mother at the Department's office on October 8, 2019. Mother agreed to attend both meetings and to submit to a drug test on October 4, 2019. Mother did not appear for the scheduled drug test, the appointment with the dependency investigator, or the meeting with the substance abuse coordinator.

The social worker spoke with mother by telephone on October 22, 2019. Mother said she had not contacted the Department because she had been ill and had not enrolled in services because she was focusing on obtaining housing and employment.

The Department filed a first amended petition on October 25, 2019 adding allegations under section 300, subdivisions (a) and (b), that mother and father had a history of engaging in violent altercations and that father had violated a restraining order prohibiting contact with mother. Father was present at the October 28, 2019 hearing at which the juvenile court found him to be Xavien's presumed father.

In a last-minute information for the court filed in November 2019, the Department reported on an October 29, 2019 interview with father, who had been released from custody. Father told the social worker that the violence between him and mother was "long ago," and that the restraining order against him was no longer active. Father said he and mother were on good terms and they had spoken over the weekend. He denied the violent incident with mother described in police reports and said mother had falsely accused him. Father's state parole officer confirmed that there was no current restraining order against him but that no contact with mother was a condition of father's parole.

The Department reported that Xavien had disclosed an incident of domestic violence to his foster caregiver. Xavien said that while he was seated in the backseat of mother's car, a male passenger broke the car windshield and began hitting mother repeatedly, asking her if she had money. Xavien said the male passenger lived with them but had never hit him.

Xavien's foster mother expressed concerns about mother's interactions with the child. Mother gave Xavien a stuffed animal which she referred to as Xavien's "baby brother." She told Xavien to sleep with it and keep it in his sight, and during telephone calls asked him whether he was taking care of it. Mother told the

7

foster parents that "Xavien lives for me." She also said that Halloween was a difficult time for her, and that she relied on Xavien to help her through the pain. Mother told the social worker that she was unable to work because she no longer had Xavien with her. The Department recommended an Evidence Code section 730 evaluation for mother.

**Adjudication and disposition**

Father testified at the December 3, 2019 combined adjudication and disposition hearing. Father said the domestic violence with mother occurred in 2013 and that he had no other incidents of domestic violence with anyone since then. He confirmed that no contact with mother was a condition of his parole and denied telling the social worker that he had recently spoken with mother.

Mother testified that a violent incident with father occurred in 2013 and there had been no altercations or communications between them since then. She said father had not contacted her in violation of the restraining order and that she had sent a letter to father's parole officer asking that the no contact condition be removed.

After hearing argument from counsel, the juvenile court sustained the allegations under section 300, subdivision (b), that mother failed to protect Xavien by allowing Ronald to be under the influence of drugs in the child's presence, placing Xavien at risk of physical harm; and that domestic violence between mother and father, including father's 2014 violation of an active restraining order prohibiting contact with mother, placed Xavien at risk of harm. The court ordered Xavien removed from mother's custody and placed with father. The juvenile court ordered mother to complete a domestic violence support group for

8

victims; drug and alcohol services with random or on-demand testing; parenting classes; individual counseling to address case issues, including child safety and childhood trauma; and mental health counseling, including a psychiatric evaluation. The court accorded mother monitored visits, not to be monitored by father or to take place in father's home.

This appeal followed.

## DISCUSSION

### I. Removal order

Section 361, subdivision (e) requires the juvenile court, before removing a child from parental custody, to determine whether reasonable efforts were made to prevent or to eliminate the need for removal and to "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

Mother contends the removal order must be reversed because the juvenile court made no factual findings regarding the need to remove Xavien from her custody or the lack of available alternatives to removal. The juvenile court's removal order states:

> "The Court finds by clear and convincing evidence, pursuant to Welfare and Institutions Code sections 361(a)(1), 361(c), 361(d) and 362(a), and additionally applying to noncustodial parent(s)/legal guardian(s) the constitutional and statutory safeguards available to custodial parents."

> "It is reasonable and necessary to remove the child from the mother, as such removal is defined in 45 CFR 1356.21(k)(1)(ii), and the care, custody, and control of the parent(s)/legal guardian(s) from whom the child is being removed because there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being, and

9

special needs, if applicable, of the child, and there are no reasonable means by which the child's physical health can be protected, without removing the child from the home and the care, custody, and control of that or those parent(s)/legal guardian(s)."

"The Court further finds that it would be detrimental to the safety, protection, or physical or emotional well-being, and special needs, if applicable, of the child to be returned to or placed in the home or the care, custody, and control of that or those parent(s)/legal guardian(s)."

"The Department of Children and Family Services made reasonable efforts to prevent removal but there are no services available to prevent further detention."

"The agency has complied with the case plan by making reasonable efforts to return the child home or taken whatever steps necessary to finalize the permanent plan."

"The Court orders the child removed from home and the care, custody and control of the parent(s)/legal guardian(s) from whom the child is being removed and placed in the care, custody and control of the Department of Children and Family Services."

The reporter's transcript of the disposition hearing contains no additional factual findings by the juvenile court.[3]

---

[3] Although the Department claims the juvenile court made the factual findings necessary to support the removal order, it

10

One appellate court has agreed with mother's contention that the juvenile court erred by failing to expressly "state the facts on which the decision to remove the minor is based" as required by section 361, subdivision (e), and that the juvenile court's written disposition order fails to satisfy the statutory requirement. (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1066.) We conclude, however, that any error by the juvenile court was harmless under the circumstances presented here. Failure to make required findings under section 361, subdivision (e) will be deemed harmless when "'it is not reasonably probable such finding, if made, would have been in favor of continued parental custody.' [Citations.]" (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.) Such is the case here.

After the initial referral that brought Xavien to the Department's attention, the Department implemented a safety plan in which mother agreed to move into the home of a maternal aunt and to avoid contact with Ronald. Mother failed to comply with that plan. Instead, she moved back in Ronald where drugs and drug paraphernalia were accessible to Xavien. Despite a no contact order, mother maintained a relationship with Ronald and continued to live with him, knowingly exposing Xavien to domestic violence and drugs within the home. After Ronald's arrest in August 2018, mother absconded with Xavien and their whereabouts were unknown for nearly a year. She and Ronald were subsequently arrested in or near the same apartment building where they had previously resided.

After Xavien was detained, mother remained uncooperative, failing to enroll in any services or to maintain

_____

fails to identify where in the record these express findings were made.

11

consistent contact with the Department's social worker and dependency investigator.

*In re Ashly F.* (2014) 225 Cal.App.4th 803, on which mother relies, is inapposite. In that case, the juvenile court's failure to state the basis for its removal order and the Department's failure to discuss its reasonable efforts to prevent removal constituted prejudicial error when there was "ample evidence" of reasonable means to protect the children in the home -- including removing the offending parent. (*Id.* at pp. 809-811.) The offending mother admitted abusing the child and was willing to move out of the home so the children could remain in the home with the non-offending father, who had completed a parenting program. (*Ibid.*) Here, in contrast, mother failed to comply with a safety plan that required her to live apart from Ronald and to have no contact with him. Despite their history of domestic violence, mother continued to share a residence with Ronald, in violation of court orders prohibiting contact between them. She knew of Ronald's methamphetamine use but continued to reside with him in a home where drugs and drug paraphernalia were accessible to Xavien. The record discloses no prejudicial or reversible error.

## II. Order for mental health services

We reject mother's challenge to the order requiring her to obtain mental health services based on the absence of any mental health allegations in the petition sustained against her. Under section 362, subdivision (d), "[t]he juvenile court may direct any and all reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section." "A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that

12

parent, once dependency jurisdiction has been established. [Citation.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.) When a court becomes aware of parental deficiencies that may impede the parent's ability to reunify with a child, the court may address them in the reunification plan. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008.) An appellate court will not disturb a discretionary decision unless it was arbitrary, capricious, or patently absurd. (*In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1456.)

The record discloses no abuse of discretion. There was substantial evidence that mother had unresolved mental health issues. Maternal aunt Jennifer C. told the social worker that mother was depressed, crying uncontrollably, and appeared in need of therapy. Mother expressed dependence on Xavien to help her cope with difficulties. The Department recommended an Evidence Code section 730 evaluation for her.

*In re Jasmin C.* (2003) 106 Cal.App.4th 177 does not support mother's position. The appellate court in that case reversed an order requiring a non-offending mother to attend parenting education classes when there was no evidence she had abused her children or failed to protect them. The Department's intervention was prompted by a single incident in which the father engaged in physical conflicts with his two teenaged daughters, the mother intervened, restrained him, and directed that the police be called. The father was arrested and ordered to move out of the home and the children remained placed with their mother. (*Id.* at pp. 179-180.) Here, in contrast, the sustained allegations against mother and the evidence in the record amply support the juvenile court's order for mother to participate in mental health services.

**DISPOSITION**

The juvenile court's orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, P. J.
LUI

_____, J.
HOFFSTADT