Filed 12/29/20  In re A.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.C., <br><br> Defendant and Appellant. | F081096 <br><br> (Fresno Super. Ct. No. 17CEJ300239-2) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  William Terrence, Judge.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P.J., Peña, J. and DeSantos, J.

Appellant challenges the dependency court's dispositional orders declining to place A.C. in his care and requiring him to participate in services that include random drug testing. We reject his claims and affirm.

**FACTS**

In 2017, mother, B.W. (hereafter "Mother") had her newborn child, I.C., removed from her care at birth due to exposure to methamphetamine. In the ensuing dependency case, Mother was denied reunification services because she was resistant to drug treatment. Her parental rights to I.C. were terminated.

On July 3, 2019, the New Mexico Children, Youth and Families Department contacted the Fresno County Department of Social Services (the "Department") to advise that Mother had given birth to her fifth child, A.C., in a hospital in New Mexico[1] on or about June 18, 2019. During labor, Mother tested positive for methamphetamine. Immediately after birth, A.C. tested also positive for methamphetamine. Mother denied drug use, except for a "relaps[e]" on June 14, 2019. The Department sought and obtained a protective custody warrant for A.C.

On July 3, 2019, the Department filed a dependency petition under Welfare and Institutions Code section 300[2] concerning A.C. The petition identified appellant T.C. as an alleged father (hereafter "Father").

The petition alleged that A.C. was Mother's third child to have been exposed to drugs in utero. It further alleged that Mother's substance abuse problems hinder her ability to care for A.C. and put A.C. at substantial risk of harm and/or neglect.

---

[1] Mother was in New Mexico when she went into labor; her "significa[nt] other," Terrance C., was a truck driver who had been making a delivery there at the time, before planning to return to Fresno.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

After the detention hearing on July 9, 2019, the court ordered A.C. detained and set a combined jurisdiction/disposition hearing for September 3, 2019. The court elevated Father to presumed father status.

Mother did not have stable housing as of July 30, 2019. Mother told social workers she was "staying 'here and there' with different people." Mother said she received food stamps and Medi-Cal. Mother did not take a drug test as directed on July 30, 2019.

Results from a DNA test performed on August 15, 2019, showed that Father was A.C.'s biological father. On September 12, 2019, Mother and Father signed a declaration of paternity. (See § 316.2, subd. (a)(5).)

In a November 5, 2019 filing, the Department asked the court to continue the hearing set for the same day so it could further evaluate Father for placement. The filing set forth Father's criminal history, which included convictions for second degree robbery in 1993; parole violations in 1998, 1999, 2001, 2007, and 2008; felony possession or purchase for sale of a narcotic/controlled substance (Health & Saf. Code, § 11351) in 2004; felony domestic violence in 2004; and misdemeanor driving under the influence of alcohol in 2011. The Department indicated that Father might not be eligible for placement or reunification services pursuant to section 361.5, subdivisions (b)(12) an (b)(13). Those subdivisions pertain to parents who have been convicted of a violent felony, and parents who have a certain history of extensive drug or alcohol abuse, respectively. (See § 361.5, subd. (b)(12)-(13).) The Department also requested that Father be ordered to enroll in random drug testing.

On November 5, 2019, the court ordered the Department to offer Father random drug testing.

In a report submitted February 28, 2020, the Department requested that Father be denied placement, but granted reunification services.[3] The report indicated the Department "initiated a referral for random drug testing" for Father on December 30, 2019. However, as of March 2020, Father had not enrolled in random drug testing. Father told social workers he does not need to drug test because he was "not a part of the reason of removal" of A.C.

The report also indicated a social worker visited Father's residence on December 26.[4] The social worker indicated the home "met minimal standards."

From November 2019 to February 2020, Father missed several of his scheduled weekly visits with A.C.

A Department social worker and Father testified at a continued jurisdiction/disposition hearing on March 3, 2020. The social worker testified that she believed placing A.C. with Father would be detrimental because: Father refused to drug test, had a significant substance abuse history, and inconsistently visited A.C. The social worker also said she questioned Father's relationship with Mother, given that he had been "showing up to court with her." The social worker said she did not have "affirmative evidence" that Father was "currently abusing any controlled substances."

Father testified that he has nine other children in addition to A.C. and never had any prior "CPS case." On cross-examination, Father stated that he did not have full custody of eight of those children.

Father stated he participated in a program after his robbery conviction that included anger management, parenting, drug usage, behavioral problems and coping skills. Father was subsequently convicted for possessing controlled substances for sale.

---

[3] The report recommended denying services to Mother.

[4] The report gives the date of December 26, 2016. Contextually, it seems clear this was a typographical error and that the date was more likely December 26, 2019.

Father "did another program after that." Father then had a DUI conviction in April 2011 and subsequently participated in a recovery program. Father did not have any substance-related charges or convictions since 2011. Father also denied using controlled substances since 2011.

When asked what his "current employment status" was, Father replied, "I am a truck driver by trade." Father then testified that his profession performs random drug tests and that he has never given a "dirty test." On cross-examination from minor's counsel, Father stated he had been on a four- or five-month leave of absence and therefore had not drug tested recently.

Father said that, if A.C. were to be placed in his care, he would do local routes as a truck driver, such as Fresno to Oakland.

At the conclusion of the hearing, the court found by clear and convincing evidence that placing A.C. with Father "would be a detriment to the minor." The court stated its finding was based "on the totality of the circumstances." The court observed that the Department was concerned about Father's substance abuse history and criminal convictions. The court noted that those considerations led the Department to request "random drug testing in the first place." The court also stated it was "concerned with the inconsistent visitation …."

The court further found that Father had a "credibility issue" because he testified on direct examination that he was "currently employed" and "as part of his employment he is subject to random drug testing." The court continued, "Only on cross-examination did this Court learn that in fact father was on a four- to five-month leave of absence" from his job.

The court also ordered Father to participate in various services, including random drug testing.

**DISCUSSION**

**I.     The Dependency Court did not Err in Declining to Place A.C. with Father**

Father argues the court erred in failing to place A.C. with him.

**A.     *Law***

When a dependency court removes a child from a parent, it must place the child with their noncustodial parent upon request, "unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."  (§ 361.2, subd. (a).)  This finding must be based upon "clear and convincing evidence."  (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569.)

**1.     Standard of Review**

" 'We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the children would suffer such detriment. [Citations.]' "  (*In re John M.*, *supra*, 141 Cal.App.4th at p. 1569.)  On substantial evidence review, "we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw.  [Citations.]"  (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

**B.     *Analysis***

Father has a significant criminal history.  In 2004, defendant was convicted of possessing or purchasing for sale of a controlled substance (See Health & Saf. Code, § 11351).  In 2011, he was convicted of driving under the influence of alcohol.  Mother relapsed in summer 2019, at a time when she called Father her support system.  It is eminently reasonable that the Department wanted Father to submit to random drug testing.  Yet, he refused.

The court advised at the July 9, 2019, hearing, "the Department has requested and this Court has offered that [Father] participate in random drug testing.  This Court is

concerned that father has elected not to participate in those services." The court also referenced the issue when ruling at the dispositional hearing. The court's concerns in this regard were quite reasonable. When a parent refuses a reasonable request for drug testing, knowing such refusal jeopardizes their ability to obtain placement of their child, one reasonable inference is that the parent fears or knows they would fail the test. Given Father's history of criminal substance abuse combined with his present refusal to submit to random drug testing, the court had sufficient evidence upon which to base its finding of detriment.

In addition, Father also missed/cancelled several visits with A.C. The court could quite reasonably infer that a father who does not make visitation a priority is not prepared to make the child a priority in his life. Such priorities would be detrimental to the child's well-being.[5] Standing alone, missed visits might not establish detriment, but it is a relevant factor considered in conjunction with those identified above.

Father points to other considerations that work in his favor, such as his lack of criminal substance abuse convictions after 2011; his participation in various programs/classes; and his lack of previous involvement with the child welfare system. However, as explained above, other evidence supported the dependency court's decision. The fact that there may be some evidence or considerations supporting the opposite conclusion does not warrant reversal on substantial evidence review. (See *In re Noe F.*, *supra*, 213 Cal.App.4th at p. 366 [on substantial evidence review, appellate court only concerned with whether sufficient evidence exists, regardless of whether it is contradicted].)

---

[5] Father cancelled visits on December 4 and 9, 2019; and January 2, 23, and 30, 2020; and February 27, 2020. Father points to his testimony that he missed visits due to work conflicts. However, the cited testimony does not establish that every planned cancellation was due to work. In any event, it does not readily explain Father's complete "no show" for a visit scheduled December 11, 2019.

7.

Father takes issue with the trial court's stated concern that, on direct examination, he did not mention his leave of absence from work. Father also contends a finding of detriment should not be based on his lack of relationship with A.C. or the possibility he will need to be absent for work. However, as an appellate court, "we review the lower court's ruling, not its reasoning; we may affirm that ruling if it was correct on any ground. [Citations.]" (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 38.) As explained earlier, the evidence of Father's criminal/substance abuse history and failure to drug test was sufficient to support the denial of placement. The fact that the trial court may have relied on additional grounds to which Father takes issue is not dispositive on appeal.

## II. The Dependency Court did not Abuse its Discretion in its Dispositional Orders Concerning Substance Abuse Services

Father contends the court erred in requiring him to submit to random drug testing and stop consuming marijuana. Father argues that since Mother's substance abuse is what lead to removal, the dispositional orders directed to Father were not "designed to the correct the issues that brought [A.C.] under the jurisdiction of the juvenile court" and therefore improper.

We reject Father's claim. As explained below, we conclude that while a court *must* order services designed to eliminate the conditions that led to jurisdiction (§ 362, subd. (d)), it *may* also order services to eliminate barriers to reunification. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008.) Here, the court's dispositional orders were permissibly directed to eliminating barriers to Father's reunification with A.C.

### A. *Standard of Review*

"At the dispositional hearing, the juvenile court must order child welfare services for the minor and the minor's parents to facilitate reunification of the family. (§ 361.5, subd. (a); [citation.]) The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent

a clear abuse of discretion. [Citation.]" (*In re Christopher H. supra*, 50 Cal.App.4th at p. 1006.)

**B.**   *Analysis*

The law requires that a parent's case plan "shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d).) "Since the focus of reunification services is to remedy those problems which led to the removal of the children, a reunification plan formulated to correct certain parental deficiencies need not *necessarily* address other types of conduct, equally deleterious to the well-being of a child …." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1464.) "However, when the court is aware of such other deficiencies that impede the parent's ability to reunify with his child, the court *may* address them in the reunification plan." (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1008, italics added.)

Any other conclusion would be logically inconsistent with the broader statutory scheme. By definition, "nonoffending" parents are not the cause of the child's initial removal. If reunification services could *only* be directed to the specific circumstances resulting in the child's removal, then reunification services could seldom – if ever – be offered to nonoffending parents. Yet, the statutory scheme clearly provides for services to nonoffending parents. (See, e.g., § 361.2, subd. (b)(3).)

Thus, we conclude a court *may* order services to eliminate barriers to reunification, even if those barriers were not the grounds for initial removal. (See *In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1008.)[6] Here, the court reasonably concluded that the risk

---

[6] This case is different from *In re Jasmin C.* (2003) 106 Cal.App.4th 177, where the appellate court held there was insufficient evidence to support requiring the nonoffending parent in that case to attend parenting classes. In that case, there was no evidence that inadequate parenting skills were a barrier to the nonoffending parent's reunification. (See *id*. at p. 181 [nonoffending parent did not engage in any "inappropriate behavior"].) Here, however, the record does disclose barriers to

9.

demonstrated by Father's criminal substance abuse history and present refusal to submit to drug testing posed a barrier to him reunifying with A.C.[7]  Accordingly, it ordered services be provided to Father, including substance abuse services.  We see no abuse of discretion.[8]

## DISPOSITION

The dispositional orders are affirmed.

---

reunification:  Father's criminal substance abuse history and refusal to submit voluntarily to drug testing.

[7] Father insists that the social worker had no *affirmative* evidence he was currently using drugs.  However, social workers are not required to just "take parents word for it" when it comes to substance abuse.  The Department may reasonably conclude that its obligation to ensure the safety of the child before placing him with a parent with criminal substance abuse history warrants drug testing.  And it may also reasonably conclude that such a parent's refusal to drug test is circumstantial evidence that they may currently be using drugs and pose a risk of detriment to the child.

[8] Father also contends that submitting to random drug testing causes him undue burden because he is a truck driver and often works out of town.  However, he presents no evidence as to whether his situation could or could not be accommodated.  We assume Father is not the first person ordered to complete random drug testing services who sometimes works out of town.  In any event, the potential harm identified by Father would only be realized if the court holds him at fault for not complying with drug testing requirements that were geographically or financially impossible for him to satisfy.