Filed 1/31/25  In re S.C. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re S.C., et al., Persons Coming Under Juvenile Court Law. | B335690 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CARLOS C.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 23CCJP04405) |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Carlos C. (Father) appeals from the jurisdictional and dispositional orders of the juvenile court in dependency proceedings regarding his daughter S.C. (born January 2018) and his son C.C. (born April 2020). Father challenges the sufficiency of the evidence to support the court's jurisdictional finding under Welfare and Institutions Code section 300, subdivision (b)[1] that his use of marijuana and alcohol placed the children at risk. He further contends the court abused its discretion by ordering him to participate in a full substance abuse program as part of his case plan. We affirm.

## FACTS AND PROCEEDINGS BELOW

### A.      Petition Underlying Dependency Proceedings

On December 22, 2023, the Los Angeles County Department of Children and Family Services (DCFS) filed a section 300 petition alleging that S.C. and C.C. came under the jurisdiction of the juvenile court based on allegations that Father and the children's mother, Stephanie B. (Mother), had a history of engaging in domestic violence in the presence of the children, and on a specific instance of domestic violence on December 10, 2023. On February 20, 2024, DCFS filed a first amended petition alleging, inter alia: "[Father] has a history of substance

_____

[1] All further statutory references are to the Welfare and Institutions Code.

2

abuse and is a recent abuser of alcohol and marijuana which renders . . . [F]ather unable to provide regular care and supervision of the children.  On or about July 2023, . . . [F]ather was under the influence of marijuana and alcohol while the children were in . . . [F]ather's care and supervision.  On or about August 2023, . . . [F]ather was under the influence of alcohol while he engaged in a verbal and physical altercation with . . . [M]other, and while in the presence of the children.  On 12/10/2023, . . . [F]ather was under the influence of alcohol and marijuana while he engaged in a violent altercation with . . . [M]other and while in the presence of the children."

### B.      Key Evidence Presented at Jurisdiction/Disposition Hearing

The evidence before the court at the March 7, 2024 hearing on the amended petition included the following:

#### 1.      *Mother's Statements and Videos on Mother's Phone*

During interviews with DCFS, Mother reported that she had been in a relationship with Father for 10 years.  Father had been physically abusive to her several times over the preceding approximately five years, including hitting her on the head with the gun he kept in the home and strangling her.  During the December 10, 2023 incident, Father kicked, punched, and choked her, and threatened to kill her, chop up her body, and bury it in the desert.

During her first interview with DCFS, "Mother denied [F]ather was under the influence of any substances the day of the [December 10, 2023] incident, but reported [F]ather uses marijuana and alcohol."  In subsequent interviews, however,

3

Mother stated he was " 'drunk and aggressive that day' " and under the influence of both marijuana and alcohol to such an extent he " 'couldn't walk straight.' "

Two videos Mother recorded on December 9 depict Father drinking in the family kitchen while holding a gun. In the first, Father "is shown consuming alcohol in the kitchen while talking to . . . [M]other. Father is visibly holding a firearm while threatening [to] shoot . . . [M]other while the children are heard in another room. [¶] In a second clip, [M]other is standing in the kitchen while [F]ather continues to talk to her while consuming alcohol. Father has his gun on the kitchen counter while [C.C.] is also sitting on the kitchen counter. During the video, [F]ather is seen picking up the gun in the presence of . . . [M]other and [C.C.]"

Mother further told the social worker that Father had used marijuana daily "since he was in middle school," that he did not do so in the children's presence, and that she cared for the children when he was under the influence. According to Mother, since July 2023, Father also drank one to six beers daily. Mother suspected Father used other drugs "based on his paranoid and aggressive behaviors" such as "grind[ing] his teeth, [being unable to] keep still," making "comments that someone was following him," and repeatedly checking the locks on the doors and windows of the home in the middle of the night.

### 2. *Father's Statements and Driving Under the Influence Arrest*

During DCFS interviews, Father denied having any substance abuse or mental health issues. He reported having started using marijuana approximately eight years ago, at the age of 21, and that he used marijuana two or three days per week

4

to help him sleep.  Father said he stored the marijuana in a safe and Mother took care of the children when he was under the influence.  Father started drinking at the age of 21, initially drinking a six pack of beer once a week or every other week.  He now occasionally consumes a six pack of beer at family gatherings.  Father denied his alcohol and marijuana use ever "created problems."

Father further reported, however, that he had been arrested for driving under the influence (DUI) in 2019.  Father had two outstanding warrants, one associated with the DUI and one for driving without a valid license.  A police incident report provides further detail about his "DUI combined alcohol and drug" arrest.  (Capitalization & boldface omitted.)  Police responding to a report of a crash found Father in the driver's seat with a bong in his lap and jars of marijuana and empty bottles of beer strewn in the car.  Police described Father as "extremely disorientated" and "unable to stand on his feet without assistance."  Father's blood alcohol level was .229 percent and he had cannabinoids in his system.

On February 2, 2024, Father told the dependency investigator he was "open" to an on-demand drug/alcohol test that same day.  The dependency investigator then called and texted Father to inform him that an on-demand drug/alcohol test was approved at Father's preferred location, but Father never responded or tested that day.

### 3.    *Children's Statements*

During an interview with a DCFS investigator, S.C. (then six years old) reported seeing Father hit and push Mother.  She reported not feeling safe with Father and stated:  "He will hurt us.  He is gonna go to jail because he drinks beer and hurts my

5

mommy." S.C. said Father had a gun, and that she had seen it. S.C. stated Father hit her and her brother with a belt, causing injuries, and that this occurred "10 times." S.C. also reported that Father " 'always smokes. I see it. He says—Get out. . . . The smoke was brown and white. He loves beer a lot.' "

C.C. (then three years old) reported that he has seen Father "push[ ] [Mother]. Locked the door on mom. Daddy threw a toy at my face."

### 4. *Statements of Other Relatives*

Maternal aunt N.N. told DCFS in an initial interview that she had seen Father drink alcohol and become intoxicated, and that when he was intoxicated he was "not the best person." "She stated [F]ather drinks and drives and has driven with the children while under the influence. [She] stated when [F]ather drinks and drives, he 'gets in the zone when he's mad' and will speed with no regard for others. She stated she stopped going to visit [M]other in Palm Desert because of how . . . [F]ather gets." In a subsequent interview, she further informed DCFS that Father " 'drinks a lot of beer and liquor. He smokes marijuana. The car smelled like weed with the kids in the car.' "

Several maternal and paternal extended relatives told DCFS they were unaware of problems in the parents' relationship until the December 10 incident and denied any knowledge of Father using drugs or using inappropriate discipline with the children.

6

### C. Challenged Orders Regarding Jurisdiction and Disposition

The juvenile court struck the allegation of Father's arrest for DUI as a basis for jurisdiction, but otherwise sustained the allegations of the amended petition.

The court declared the children dependents of the court, removed them from Father, and placed them with Mother under a plan of family maintenance. The court ordered DCFS to provide Father with enhancement services that included a full drug and alcohol treatment program with aftercare. In so doing, the court rejected Father's argument that a full substance abuse program was not "necessary at [the] time" and his related request that he be instead referred for drug treatment only after testing positive, or that he first be assessed to determine whether such services were necessary. Father also requested that DCFS "actively work with . . . Father to identify remote programs" for all of his services, because of his work schedule.

Father filed a timely appeal.

### DISCUSSION

On appeal, Father challenges the sufficiency of the evidence to support the jurisdictional finding based on his substance abuse. He also challenges the requirement that he complete a full drug and alcohol program with aftercare. We find no error and affirm.

### A. Substantial Evidence Supports the Jurisdictional Finding Regarding Father's Substance Abuse

As a preliminary matter, DCFS contends that Father's challenge to the jurisdictional order is moot. Specifically, DCFS argues (and Father concedes) that because Father challenges

7

only one of several jurisdictional bases sustained in the petition, even if we reverse the challenged jurisdictional finding as Father requests, the juvenile court would still have correctly asserted jurisdiction over the children.  (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  Father, however, asks that we exercise our discretion to nevertheless reach the merits of his appeal.  We choose to do so because the finding Father challenges serves as the basis for the dispositional order he also challenges on appeal.  (See *In re D.M.* (2015) 242 Cal.App.4th 634, 638–639.)

The court sustained the challenged jurisdictional finding under section 300, subdivision (b), which requires " 'evidence indicating that the child is exposed to a substantial risk of serious physical harm or illness.  [Citation.]' " (*In re David M.* (2005) 134 Cal.App.4th 822, 829.)  This risk must exist as of the time of the jurisdictional hearing (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547), but may be based on a parent's past conduct, so long as the evidence suggests that past conduct is likely to reoccur or otherwise establishes a current risk.  (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1135; *In re Rocco M.* (1991) 1 Cal.App.4th 814.)  We review jurisdictional findings for substantial evidence, meaning "we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding." (*In re James R.* (2009) 176 Cal.App.4th 129, 135; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393–1394.)

Father argues the evidence supports only that he uses legal[2] substances (alcohol and marijuana), not that he uses these substances while caring for the children or in a manner that places the children at risk. He points to Mother's statements that she watches the children while he is under the influence. He characterizes maternal aunt's statements to the contrary as mere speculation, because maternal aunt admitted she did not spend very much time with Father or in the family home.

Mother's statement that she watches the children when Father is under the influence is belied by other evidence. According to S.C., Father drank and smoked marijuana in her presence, and Father "hurt mommy" when he did so. Moreover, the videos on Mother's phone depict Father not only drinking alcohol with the children nearby, but engaging in dangerous and threatening behavior while doing so. Namely, in these videos, Father is drinking alcohol, holding a gun, and threatening Mother, all while, in one instance, the children are heard in the background, and in the other instance, C.C. is within reach of the weapon.

And regardless of how many opportunities maternal aunt had to observe Father, during the opportunities she did have, she saw him drive recklessly while under the influence with the children in the car, and on one occasion smelled marijuana in his car while the children were in it.

---

[2] Father argues we should disregard Mother's statements that he might be using illegal drugs as mere speculation. We need not determine whether Mother's statements to this effect would support the challenged finding, because we depend on other evidence to support the finding.

**B.  The Court Did Not Abuse Its Discretion in Ordering Father to Participate in a Full Substance Abuse Program**

We review the case plan requirements in a dispositional order for an abuse of discretion.  (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006 (*Christopher H.*).)  The court may make "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child" (§ 362, subd. (a)), including "any reasonable orders [directed] to the parents or guardians of the child . . . as the court deems necessary and proper to carry out this section . . . .  The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by [s]ection 300."  (§ 362, subd. (d).)  Proper dispositional orders are thus designed to address potential obstacles to family reunification (*Christopher H., supra,* at p. 1006), as determined by the court's review of the entire record.  (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 311.)

Although it is not entirely clear from the briefing, Father appears to be arguing that the evidence does not support— and the petition does not even allege—that, as of the date of the jurisdictional hearing, he was addicted to drugs or alcohol, or that he generally struggled with substance abuse issues to such an extent that ordering him to complete a full substance abuse treatment program with aftercare was "tailored to eliminate legitimate protective issues."  He argues that, instead, the evidence supports at most that he has in the past used marijuana and alcohol.  According to Father, only having a more serious substance abuse problem or being addicted—not mere

historical substance use—can justify ordering a full substance abuse treatment program.

We do not agree that this distinction is significant here, because the issue is not whether Father's substance abuse reached some unspecified level he deems sufficient to require a full treatment program. Rather, we must consider whether the court could reasonably conclude that requiring Father to complete a full substance abuse program would help to "eliminate those conditions that led to the court's finding" that the children were at risk of harm without juvenile court oversight (§ 362, subd. (d)), and/or eliminate obstacles to reunification. (*Christopher H., supra,* 50 Cal.App.4th at p. 1006.) As we conclude above, substantial evidence supports the jurisdictional allegations that, on multiple occasions, the children were at risk of harm when Father engaged in violent and dangerous behavior that coincided with alcohol and/or marijuana use. The videos on Mother's phone support this. Further, according to Mother's statements, when Father assaulted her on December 10— with the children in the home—he was under the influence of marijuana and alcohol to such an extent that he could not walk straight. Thus, whether or not Father had a substance abuse "problem" by Father's preferred definition of the term, or was addicted to alcohol or marijuana, the connections between his use of these substances and the behavior placing the children at risk rendered it within the bounds of the court's discretion to require Father to participate in a program to address his use of those substances.

Father's reliance on *In re Jasmine C.* (2003) 106 Cal.App.4th 177, 179, for the proposition that a court may not require a nonoffending parent to attend a parenting class when

11

there is no substantial evidence that the parent or the children will benefit from such services is thus of no assistance to Father. To the contrary, *Jasmine C.* underscores that a court *can* properly order an offending parent (like Father) to participate in a program when the evidence shows (as it does here) that the parent *would* benefit from the program.

Finally, Father points out that completing a full drug program with aftercare "placed unnecessary stress on [F]ather" because "[F]ather worked long hours." Although we sympathize with the temporal difficulties an order for extensive programming may impose on a parent, this is not a sufficient basis for concluding that the court abused its discretion in crafting Father's case plan.

## DISPOSITION

The orders are affirmed.
NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


M. KIM, J.

12