Filed 2/13/26  In re Amy V. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re AMY V. et al., Persons Coming Under the Juvenile Court Law. | B346332 (Los Angeles County Super. Ct. No. 24CCJP04038) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.G.,<br><br>        Defendant and Appellant. | |

APPEAL from the dispositional order of the Superior Court of Los Angeles County, Syna N. Dennis, Judge.  Affirmed in part and reversed in part.

Akila A. Shenoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————————

In this appeal in a dependency case, mother (J.G.), who was nonoffending, challenges only that part of the juvenile court's dispositional order requiring her to attend a support group for domestic violence. We agree with mother that this requirement constitutes an abuse of discretion. Although father perpetrated domestic violence, mother and father ended their relationship a decade before the dependency proceedings commenced.[1] At the time of the dependency proceedings before us, mother was not in an abusive relationship. Additionally, the children were safe in mother's custody and remained there throughout the dependency proceedings. Father's abusive conduct against his partner, Y.L., also does not support an order requiring mother to attend a domestic violence support group. Accordingly, we reverse that requirement in the juvenile court's disposition order and affirm the court's dispositional order in all other respects.

## BACKGROUND

Mother and father ended their relationship in 2014. Father has two sons with mother, Angel and Adrian, and two daughters, Amy and Alexa. Father has four additional children with Y.L., who also has a child from a different relationship. In 2020, father

_____

[1] Father is not a party to this appeal.

2

was arrested for carrying a loaded gun, a charge that was later dismissed. In 2024, father was arrested for child abuse and possession of an assault weapon. The record does not show whether he was charged with those crimes.

Throughout the dependency proceedings, the children remained in mother's custody. Mother worked as a medical assistant.

## 1. Petition

In December 2024, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition naming Angel (17 years), Amy (16 years), Adrian (14 years), and Alexa (13 years) as dependents. As later sustained, the petition alleged father sexually abused Amy and this sexual abuse placed Amy, Alexa, and Adrian at risk of sexual abuse in the future. The juvenile court struck Angel from the petition.

No allegation in the petition involved mother or alleged domestic violence.

## 2. DCFS reports

It is undisputed that father sexually abused Amy. DCFS reported in December 2024, mother took Amy to the hospital as soon as Amy told mother about father's sexual abuse. DCFS described mother as "behav[ing] in a protective capacity by taking Amy to be assessed at the hospital following her disclosure." When interviewed by a social worker, mother reported father's past domestic violence. Mother told the social worker there was no physical violence since she and father ended their relationship in 2014.

Amy told the social worker that over a two-year period, father repeatedly touched her inner thigh and on some of those

3

occasions, Amy observed father having an erection. On one occasion, father told Amy to "grab his dick" but she refused. Amy wanted to continue living with mother and did not want to live with or visit father. Amy reported that in the past, mother and father had "an abusive relationship." Amy stated, " '[Father] used to hit my mom all the time.' " Amy also observed father hit Y.L. Amy reported father hit her with a belt on her leg.

Alexa told the social worker father "touched her thighs once or twice." Alexa also reported father touched her " 'inner thigh' " but " '[n]ot in a sexual way . . . .' " Father asked to look at Alexa's "butt." Alexa further reported Amy was afraid to tell mother about father's conduct because father "had threatened mom before" and Alexa warned Amy not to " 'put [mother] in danger.' " In approximately 2014, Alexa saw father hit mother once. More recently, Alexa saw father hit Y.L. Alexa told the social worker she was scared of father.

Angel told a social worker that in approximately 2018, he observed a physical fight between mother and father. Angel did not observe father touch Amy in a sexual manner, but he observed father hit Amy with a belt.

Adrian told the social worker he preferred to live with father. Adrian did not believe father sexually abused his sisters.

### 3.    *Interviews with forensic evaluator*

Amy told a forensic evaluator that father asked her, " 'Are you posing like that to give me a boner? . . . While grabbing his dick . . . Do you touch yourself? Show me how you touch yourself. How many fingers do you use to masturbate?' " Amy also reported father rubbed her back and upper inner thigh. On one occasion in the car, father said he "was getting an erection and told Amy to grab his dick." Amy also reported to the forensic

4

evaluator father physically abused her when she dated a person her father did not like and that mother saw bruises caused by father. Amy recounted that father beat Y.L.

Alexa told the forensic evaluator she heard father ask Amy, " 'Let me see how you do it? Do you want to touch it?' " Alexa reported father asked her the same questions. On another occasion, father asked to look at Alexa's butt. Alexa also reported being afraid of father because he hit her. Alexa said mother saw a bruise after father hit her. Alexa saw father hit Amy.

### 4. *Jurisdictional dispositional hearing*

No witness testified at the jurisdictional and dispositional hearing. With respect to disposition, mother's counsel argued, inter alia, a domestic violence support group was not necessary. Counsel for DCFS responded: The "Department is asking for domestic violence classes for mother and father because all the minors except [one] recall domestic violence incidents between mother and father. [¶] Amy and Alexa reported that father has hit the stepmother . . . ."

The juvenile court found, "I do think that domestic violence support group for victims would be appropriate in this case. I understand that the allegations regarding domestic violence were not pled in this petition and there was no allegation of domestic violence sustained and the . . . last reported incident may have been several years ago. [¶] But in the reports, the children do report that domestic violence was going on, and they specifically reported that they did not tell the mother about the sexual abuse because they were afraid that the father would hurt the mother. So there's some issues going on here today concerning domestic violence, and I am going to be including that on the mother's case plan."

### 5. *The court's dispositional orders concerning mother*

The court ordered mother to participate in individual counseling to address case issues. The court also ordered mother to attend sex abuse awareness counseling and to participate in family preservation services. Finally, the court ordered mother to attend a support group for victims of domestic violence, the order mother challenges on appeal.

### DISCUSSION

" 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' [Citation.]" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) The juvenile court's discretion extends to order a nonoffending parent attend programs. (*Ibid*.) Indeed, "the court may make 'all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . .' [Citation.]" (*In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180.)

The court, however, may not order a class where the class would benefit neither the parent nor the child. (*In re Jasmin C., supra,* 106 Cal.App.4th at pp. 178–179.) As the parties agree, although "[j]uvenile courts should be mindful of the burdens their disposition orders impose on parents already grappling with difficult conditions and circumstances[,] . . . . the paramount concern always must be the child's best interests, and [the reviewing court] cannot reverse a disposition order reasonably fashioned to eliminate the conditions that led to dependency jurisdiction, no matter how burdensome its requirements may

6

seem from the parent's prospective.' [Citations.]" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071–1072.)

The juvenile court abused its discretion in ordering mother attend a domestic violence support group, and the order was particularly burdensome to a nonoffending mother who took care of four children, worked, and also was ordered to attend individual counseling, sex abuse awareness training, and family preservation services. Mother did not have an ongoing issue with domestic violence. Her relationship with father ended in 2014 and there was no evidence, at least since 2018, that father perpetrated domestic violence on mother. The fact that father perpetrated domestic violence on Y.L. does not support the conclusion that mother should attend a domestic violence program. Further, the fact the children were afraid of father does not support the order requiring mother to attend a domestic violence support group. Although Alexa was afraid mother would be in danger if Amy reported sexual abuse to mother, the record shows that mother immediately took steps to investigate the claim of sexual abuse once Amy reported it. Alexa's fear of father is not evidence that mother needed a domestic violence support group. Although there was considerable evidence that *father* needed to work on his violent tendencies, no evidence showed that at the time of the jurisdictional hearing, *mother* needed a domestic violence support group.

No evidence supported that a domestic violence support group would ameliorate the conditions leading to dependency jurisdiction. The petition did not allege jurisdiction based on domestic violence. No evidence supported the juvenile court's finding that it was in the children's best interest for mother to attend a domestic violence support group when there was no

7

evidence father had committed violence against mother since at least six years before commencement of the dependency proceedings, and it was undisputed that mother had severed her relationship with father over a decade before those proceedings began.  There was no evidence that the children would not be safe in mother's care, where they remained during the dependency proceedings, absent her attending a domestic violence support group.  In short, because no evidence supported the juvenile court's order requiring mother attend a domestic violence support group, that order constitutes an abuse of discretion.

## DISPOSITION

The juvenile court's dispositional order is reversed insofar as it requires mother to attend a domestic violence support group. In all other respects, the juvenile court's dispositional order is affirmed.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.

8