Filed 8/26/21  In re J.T. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re J.T., et al., Persons Coming Under the Juvenile Court Law. | B309535 (Los Angeles County Super. Ct. No. 20CCJP04637) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JERMAINE T., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore.  Affirmed in part and vacated in part.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

Jermaine T. (father) argues substantial evidence does not support the juvenile court's jurisdictional findings under Welfare and Institutions Code section 300, subdivision (b)(1), that his alcohol and marijuana use created a risk of serious harm to his children.[1]  He also challenges the related dispositional orders.

Although father does not challenge the juvenile court's jurisdictional and dispositional findings based upon domestic violence, we nevertheless exercise our discretion to review the findings with respect to alcohol and marijuana.

We affirm the orders involving alcohol abuse as there was a substantial nexus between alcohol abuse and risk to the children. We vacate the orders related to marijuana use because there was no such nexus.

## FACTUAL AND PROCEDURAL BACKGROUND

This dependency matter concerns three of father's children: two-year-old JT3, five-year-old JT2, and seven-year-old JT1 (collectively, the children).  Fourteen-year-old Jeremiah H. is the children's maternal half-sibling, and is not a subject of this appeal.

_____

[1] Subsequent undesignated statutory citations are to the Welfare and Institutions Code.

**A. Events Leading up to Assertion of Dependency Jurisdiction**

On August 17, 2020, the Department of Child and Family Services (Department) received a referral alleging that father and mother were involved in a domestic violence incident on August 9, 2020. The referring party stated that father left the family home to go drinking and returned at 11:00 p.m. At 6:00 a.m. the following morning, father came to the living room where mother was sleeping, dragged her off the couch, hit her in the face with his elbow, and loosened one of her teeth. Five-year old JT2 pulled father off mother, who then left the home before police arrived. A children's social worker (CSW) responded that day, but was unable to enter the home because it was located in a gated community.

The CSW made an unannounced visit on August 20, 2020, and gained access to the community with the assistance of a neighbor. The neighbor stated: "There is a lot of violence in the family's home every day. The mother and father smoke so much weed and scream at each other daily." The neighbor further reported that police had recently responded to the family's home due to a domestic violence incident between the parents. The CSW was unable to enter the home, but noted in her report that she smelled cigarettes and marijuana coming from the home.

On August 20, mother called the CSW and scheduled a visit, and the CSW visited the home the following day. The parents were present. They reported that Jeremiah resided with his paternal grandmother. When the CSW entered the home, JT3 yelled, "Daddy hit mommy. Daddy hit mommy." Mother denied father hit her.

The CSW interviewed JT2 in private. JT2 also denied the parents yelled at each other or engaged in domestic violence. He also denied seeing the parents smoke, or consume alcohol or other substances. The CSW noted the child appeared guarded. The CSW next interviewed JT1 in private. JT1 said she felt unsafe when father yelled at mother, which she said happened daily. JT1 said she was unaware of domestic violence, alcohol or other substance abuse.

The CSW met privately with father, who denied he and mother engaged in domestic violence on August 9, 2020. Father insisted mother grabbed him to keep him from leaving and that he responded by jerking his elbow to get away. Father said he then left the home, and denied coming home intoxicated and then dragging mother. Father acknowledged he and mother had a history of domestic violence, but said they had gotten past it.

The CSW then met privately with mother who said Jeremiah was not home on August 9. She confirmed she was upset about father staying out late, and also that she had grabbed father by the elbow when he tried to leave. Mother said that caused father to accidentally hit her and cause her tooth to loosen. Mother also denied being dragged by father or being hit by him after he arrived home. Mother acknowledged she had told police father had dragged and hit her, discussed *post*, but said she was lying because she was upset with him. Mother indicated she wished to remain married to father and live with him.

On August 24, 2020, the CSW interviewed Jeremiah. Jeremiah said although he "mostly" lived with his father, I.O., he was home the night of the referral incident. Jeremiah denied hearing or seeing anything; he denied pulling father off mother, and denied witnessing any other incidents of domestic violence.

4

On August 31, 2020, the CSW interviewed the children's maternal grandmother. The maternal grandmother said father had an alcohol problem stating father was "okay until he is on that alcohol." The maternal grandmother reported mother told her that when she woke up, father elbowed her in her mouth.

The police report from the August 9, 2020 incident stated that mother reported that she and father argued on August 8, 2020, because father was "looking for an excuse to drink." Mother reported father punched her on her legs with his fists and that mother had to kick him to get him to stop hitting her legs. Mother said father then left the residence and that he was intoxicated when he returned home at approximately 11:00 p.m. and then went upstairs to sleep. Mother said she slept downstairs on the couch. Mother reported that she was awakened early the following morning by father attempting to pull her off the couch. Mother said father struck her in her mouth with his elbow, pulled her off the couch by her hair, and pushed her against a wall. Mother reported Jeremiah ran into the room and pulled father off her. Mother stated that father then fled the home. The police report further indicated Jeremiah reported that he witnessed the domestic violence and that he had to pull father off mother. Mother reported JT2 was also present during the violence. JT2 confirmed being present during the altercation and seeing father "elbow [mother] in the face." The report further documented mother had a laceration to her bottom lip, scratches on her forearm, and complained of pain to her front teeth and pain on her head where father had pulled her hair.

On August 21, 2020, father tested positive for marijuana. He tested negative for all other substances.

On September 1, 2020, the Department detained the children. Jeremiah was released to his father, I.O.; the other three children were placed with the maternal grandmother and a maternal aunt.

## B.    The Jurisdictional Petition

On September 3, 2020, the Department filed a section 300 petition, under subdivisions (a) and (b)(1), on behalf of the children, alleging the children were at risk due to the parents' history of domestic violence. Counts a-1 and b-1 alleged the children were at risk of serious harm resulting from the parent's ongoing domestic violence. (Father does not appeal the court's true findings as to those counts.)

Count b-2, the subject of this appeal, involved substance abuse allegations. Specifically, count b-2 alleged that father had a history of substance abuse, including alcohol and marijuana, and had a history of criminal convictions for possession of a controlled substance and driving under the influence of alcohol.

On September 8, 2020, the juvenile court held the detention hearing after which it detained Jeremiah from mother, and JT1, JT2, and JT3 from both parents. The court placed the children with the maternal grandmother and a maternal aunt, and maintained Jeremiah with I.O. The court ordered that mother's and father's visits with the children be monitored and that they not visit the children together.

## C.    Subsequent Investigation

On October 12, 2020, a dependency investigator (DI) interviewed the children, the parents, and the maternal grandmother to prepare the combined jurisdiction/disposition report. Jeremiah denied witnessing any domestic violence between the parents and said he lied when he reported otherwise

6

to the police. Jeremiah continued that mother had told him what to tell police, and denied that he ever saw father intoxicated at home. JT1 confirmed there was in fact domestic violence between the parents; she had seen father hit mother. She said although she was upstairs during the referral incident, she later saw mother with a bloody lip. She denied having seen father intoxicated at home.

Father continued to deny any domestic violence on the date of the referral incident, and further denied being intoxicated. Father denied having a substance abuse problem, either with alcohol or marijuana. He acknowledged being arrested for driving under the influence (DUI) years ago, but said he had not had any issues with alcohol since then. Father indicated he was participating in random alcohol testing at the request of the juvenile court. Father reported he occasionally smoked marijuana for medicinal purposes, but never in the home or around the children.

Mother denied the domestic violence allegations and said she lied to the police because she was upset with father. Mother said father did not drink very much in the home and that she had never seen him intoxicated there. But mother then stated she did not believe father used alcohol or marijuana.

When the DI interviewed the maternal grandmother, she denied personal knowledge of the referral incident, but stressed domestic violence happened "quite a bit," adding that "alcohol cause[d] a lot of the problem."

## D.    Adjudication and Disposition

On December 3, 2020, the juvenile court held a combined jurisdiction and disposition hearing.

Father's and mother's counsel objected to the allegations made in count b-2 of the section 300 petition involving the father's abuse of alcohol and marijuana. Both argued insufficient evidence supported a nexus between father's use of either substance and risk of serious harm to the children.

Father's counsel insisted that he uses marijuana solely to address the pain resulting from gunshot injuries he sustained in 2013 because, in part, he desires not to use prescription opioid pain medicine. Father's counsel further represented that father only smokes marijuana in the garage, and that he keeps the marijuana out of the reach of his children. Father previously possessed a prescription for medicinal marijuana, but has since let that prescription lapse because he can now purchase it legally at dispensaries. Father also objected to the jurisdictional finding that his use of alcohol endangers the children because his convictions for DUI were many years ago, and thus, he contended, failed to establish a nexus between current use and current risk of harm.

The juvenile court sustained the entire petition as pled. The court found that there was "a clear connection between alcohol abuse and domestic violence." The court noted it had "read the police report [where] it talks about the use of alcohol and its connection with the fighting." (The court did not state its reasons for sustaining the marijuana abuse jurisdictional finding.)

At the dispositional hearing, the court declared the children dependents of the court and removed them from mother's and father's custody, and placed them in foster care. The court terminated jurisdiction over Jeremiah, granting I.O. joint legal and sole physical custody.

As to father, the court ordered weekly random drug and alcohol tests. Father's counsel asked whether it would satisfy the court were he to obtain another prescription for marijuana, but the court declined, ordering: "He needs to have no marijuana ultimately and no alcohol." The court indicated that father could obtain prescription pain medicine instead of using marijuana.

Father timely appealed.

## DISCUSSION

### A. Discretionary Appellate Jurisdiction

While acknowledging that the jurisdictional findings made with respect to domestic violence in counts a-1 and b-1 will remain intact, father nevertheless asks us to examine the juvenile court's section 300, subdivision (b) jurisdictional findings involving his use of alcohol and marijuana (count b-2), and the corresponding disposition orders.

Dependency jurisdiction under section 300 is said to be taken over the *child*, not *the parents*, as a result of the harm or risk of harm facing the child. (See, e.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 310.) Because the juvenile court assumes jurisdiction over the child, not over the parents, jurisdiction may exist based on the conduct of one parent alone or the basis of one true jurisdictional finding among many. (See § 302, subd. (a); *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

Nevertheless, we may exercise our discretion and reach the merits of a parent's challenge to any jurisdictional finding when

9

the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 454); (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (see, e.g., *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; see also, *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1494); or (3) "could have other consequences for [the appellant], beyond jurisdiction." (*In re I.A.*, *supra*, at p. 1493.)

Father argues we should exercise our discretion to reach the merits of his appeal because the jurisdictional findings involving alcohol and marijuana abuse served as a basis for dispositional orders and have consequences beyond jurisdiction. We agree.

**B.    Substantial Evidence Supports the Court's Jurisdictional and Dispositional Findings Involving Alcohol Abuse**

1.    *Standard of Review*

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) Under this standard, " 'we must uphold the . . . [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support [them].' " (*Ibid*.)

2.    *Section 300, Subdivision (b)*

Section 300, subdivision (b) allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of

10

his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . ." (*Ibid.*)

A valid jurisdictional finding under section 300, subdivision (b) requires allegations of: (1) neglectful conduct by the parent in one of the specified forms; (2) *causation*; and (3) serious physical harm or illness suffered by the minor, or a substantial risk of such harm or illness. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

3.    *Analysis*

Father argues substantial evidence does not support the court's jurisdictional findings involving alcohol abuse as to count b-2 of the sustained petition. Although father acknowledges "[t]here was evidence that [he] consumed alcohol, and did so, in proximity to the domestic violence between the parents," this does not satisfy the requisite standard of "abuse," he contends, but is instead merely evidence of "use." Father insists that his past DUI convictions were "many" years ago, and thus, cannot be used to infer a risk of present harm to the children. (See *In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824 ["While evidence of past conduct may be probative of current conditions, the questions under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm"].)

Substantial evidence supports the juvenile court's jurisdictional findings involving father's alcohol abuse. Although mother claimed she lied when she told law enforcement that father was intoxicated during the domestic violence incident that led to the instant referral, the juvenile court evidently did not

11

find her recantation credible because it sustained the counts in the section 300 petition alleging domestic violence. Mother reported to law enforcement that the domestic violence began as a result of father "looking for an excuse to drink." The maternal grandmother also reported to both the CSW and DI that father had an alcohol problem that contributed to the domestic violence.

Under the deferential substantial evidence review applicable to father's challenge, substantial evidence supports the court's jurisdictional findings involving father's alcohol abuse. We also reject father's challenge to the dispositional order that he submit to testing for the presence of alcohol because that order is "designed to eliminate the conditions that brought the minor to the attention of the court." (*In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180, citing § 362, subd. (c).)

## C. Substantial Evidence Does Not Support the Court's Jurisdictional Findings Involving Marijuana Abuse

Father argues insufficient evidence supports the court's jurisdictional findings that his marijuana use impacted his ability to care for the children. While acknowledging he is a current user of marijuana, father insists the evidence before the court merely consisted of this admission. He cites *In re Drake M.* (2012) 211 Cal.App.4th 754, 769 for the proposition that a jurisdictional finding predicated "merely on [marijuana] usage *alone* without *any* evidence that such usage has caused serious physical harm or illness . . . is unwarranted and will be reversed."

The Department responds by pointing to the following evidence: (1) upon the initial attempt to interview the parents following the referral, the CSW spoke to a neighbor who said, "The mother and father smoke so much weed and scream at each other daily"; (2) that same CSW smelled cigarettes and

marijuana coming from the home; and (3) father tested positive for marijuana during the Department's investigation.

The Department's evidence does not show that the children were at risk of imminent physical or emotional harm caused by father's use of marijuana. "It is undisputed that a parent's use of marijuana '*without more,*' does not bring a minor within the jurisdiction of the dependency court." (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003, citing *In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 453.) We vacate the jurisdictional findings involving father's marijuana use in count b-2 from the sustained petition.

**D.    The Court's Dispositional Order that Father Test for Marijuana Use Was Not an Abuse of Discretion**

We review a juvenile court's dispositional orders for abuse of discretion. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1221.) The case plan following disposition requires father to participate in weekly random drug testing. The court advised father that, if he missed a drug test or tested positive for substances, he would be required to complete a substance abuse treatment program. The juvenile court further required father to show that the level of marijuana in his system was decreasing to zero.

"The juvenile court has wide latitude in making orders necessary for the well-being of a minor. By statute, the court may make 'all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . .' " (*In re Jasmin C.*, *supra*, 106 Cal.App.4th at p. 180, citing § 362, subd. (a).) The court has broad discretion to address known issues harmful to the well-being of the child even where such issues are not the direct cause of the child's detention. (See *In re*

13

*Christopher H.* (1996) 50 Cal.App.4th 1001, 1008; accord, *In re Briana V.* (2015) 236 Cal.App.4th 297, 311.)

Father does not dispute that he engaged in a serious act of domestic violence while under the influence of alcohol with very young children in the home. Indeed, his five-year-old son had to pull him off mother during an assault in the middle of the night. Father admits he uses marijuana regularly, which was confirmed by a neighbor who linked its use to domestic violence: "[M]other and father smoke so much weed and scream at each other daily." Under our deferential standard of review, the trial court did not abuse its discretion in requiring father to refrain from and test for marijuana. (*In re N.M.* (2011) 197 Cal.App.4th 159, 171.)

## DISPOSITION

The juvenile court's jurisdictional findings involving marijuana abuse as to count b-2 of the sustained section 300 petition are vacated, as is the corresponding dispositional order. In all other respects, the jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED

CRANDALL, J.*

We concur:

CHANEY, J.                    BENDIX, Acting P. J.

_____

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14