Filed 11/14/23  In re E.L. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re E.L. et al., Persons Coming Under the Juvenile Court Law. | B325720 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. Nos. 22LJJP00339A, 22LJJP00339B |
| Plaintiff and Respondent, | |
| v. | |
| S.K. et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Donald A. Buddle, Jr., Judge.  Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant S.K.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant T.L.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

———————————

The juvenile court took jurisdiction over E.L. and R.K. after finding their mother has substance abuse issues and used marijuana while pregnant. The court declined to remove the children from their parents' custody. However, it included in the parents' case plans random drug testing, parenting classes, and domestic violence counseling. On appeal, mother challenges the court's jurisdictional findings and dispositional order that she participate in domestic violence counseling. Father challenges the court's inclusion in his case plan of domestic violence counseling, random drug testing, and parenting classes. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Investigation*

Mother and father have two children together, E.L. (born in November 2015) and R.K. (born in May 2022). Both children have serious medical conditions. E.L. was diagnosed with autism and ADHD. R.K. was born with a cleft palate, duplication in chromosome 22, and microcephaly.

As a result of R.K.'s medical conditions, she was hospitalized for two months after her birth and needs to be fed through a gastrostomy tube. According to hospital staff, mother went long periods without visiting R.K., and the staff had trouble contacting mother via phone. During one visit with R.K., a nurse observed mother acting "erratic[ally]" and seemingly "under the influence" of a drug. Mother reportedly ripped open her shirt in public and said she wanted to breastfeed the child.

2

In June 2022—about a month after mother gave birth to R.K.—the Los Angeles County Department of Children and Family Services (the Department) received a report that the child's meconium had tested "presumptive[ly] positive" for methamphetamine, cocaine, and tetrahydrocannabinol (THC). A "presumptive positive" result "means that the screening method is positive, but the test needs to be run by a confirmatory method before being finalized." Mother told a hospital social worker she was concerned she may have used marijuana that was "laced" with something else.

### 2. *Mother's substance abuse*

Despite the Department's many efforts, it was not able to interview mother until July 26, 2022. Mother denied knowingly using any drugs while pregnant. She admitted she had taken "CBD" capsules for nausea and lethargy, but she claimed she had not known she was pregnant at the time. Mother speculated that her "workout medicine" may have caused the positive result for methamphetamine. During a later interview, mother told the Department she " 'smoked weed one or two times' " before she knew she was pregnant.

Mother revealed she has a significant history of substance abuse. She said she met father because they " 'use[d] to use together.' " According to mother, she became addicted to pain medication, which led her to start using methamphetamine and heroin. Between 2013 and 2014, mother suffered seven criminal convictions, most of which involved controlled substances. Mother said she eventually went to rehab, had been sober for more than six years, and regularly attends Narcotics Anonymous meetings.

3

Father told the Department mother used "CBD Gummies" before realizing she was pregnant. He denied using any drugs or alcohol. Father initially agreed to drug test for the Department, but he later refused. The Department discovered father had been convicted of possession of a controlled substance for sale in 2014, and inflicting corporal injury on a spouse in 2001.

The hospital performed confirmation tests on R.K.'s meconium, which came back positive for THC, but negative for methamphetamine and cocaine. The hospital's administrative director told the Department presumptive screenings may produce false positives, but confirmatory tests are reliable.

### 3. *Domestic violence*

During its investigation, the Department learned father had been arrested for domestic violence in February 2021. According to the police report of the incident, mother thought father was going to hit her during an argument, so she covered her face with her arms. Father grabbed mother's forearm and pushed her several feet, until she fell over the side of a sofa. Father hovered over mother while she lay on the couch. Mother ran out of the room and called the police. Mother had bruises on her forearm. She told an officer there were "numerous" prior incidents of domestic violence between her and father. Mother requested and received an emergency protective order against father.

Despite the police report, mother and father told the Department there was no domestic violence in their relationship. When asked why she called the police in February 2021, mother said she only wanted father to leave the house. Mother suggested E.L., not father, had caused the bruises on her arm.

## 4.    *Dependency proceedings*

The Department filed a petition asserting E.L. and R.K. are persons described by Welfare and Institutions Code section 300.[1] The petition alleged R.K. was born "suffering from a detrimental and endangering condition" of "presumptive positive toxicology screens for methamphetamine, cocaine, and [THC]." It also alleged mother has a history of substance abuse and is a current abuser of methamphetamine, cocaine, and THC, which renders her unable to provide regular care of the children. As to father, the petition alleged his criminal history endangers the children and places them at risk of harm. It also alleged father and mother have a history of domestic violence.

At the detention hearing, the court found a prima facie case the children are persons described by section 300. It released the children to their parents' custody on the condition that the parents drug test. Father did not object.

Mother tested negative for drugs three times between September and November 2022. She was a "no show" at a test on November 17, 2022. Father was a "no show" at every test.

The juvenile court held a combined jurisdiction and disposition hearing on November 29, 2022. Mother presented evidence that she had completed a "Happy Heart Parenting" class and been accepted into a six-month outpatient drug program.

After considering the evidence, the court struck from the petition the allegations related to cocaine and methamphetamine. As amended, the court sustained the counts concerning mother's substance abuse and R.K.'s positive toxicology screen for THC.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

5

The court dismissed the counts related to domestic violence and father's criminal history.

As to disposition, the court declared the children dependents and released them to their parents' custody. Over the parents' objections, the court included in their case plans random drug testing, domestic violence counseling, and parenting classes. The court ordered that, once each parent provides four consecutive negative drug tests, the Department may test them only on suspicion of drug use.

Mother and father timely appealed.

## DISCUSSION

### 1. *The court did not err in taking jurisdiction over the children*

Mother argues the juvenile court erred in finding the children are persons described by section 300.[2]

Generally, a parent's substance abuse, "without more," is an insufficient basis to assert dependency jurisdiction. (*In re L.W.* (2019) 32 Cal.App.5th 840, 849 (*L.W.*).) Rather, the Department must show the parent's substance abuse harms the child or places the child at substantial risk of harm. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766–767 (*Drake M.*), disapproved of on other grounds in *In re D.P.* (2023) 14 Cal.5th 266, 282–283; see *L.W.*, at p. 850 [mother engaged in dangerous behavior due to substance abuse placing child at risk of harm].) However, when a child is " 'of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety,' " a "finding of substance abuse is prima facie evidence of the inability of a parent or guardian to

---

[2]     Father joins mother's argument.

6

provide regular care resulting in a substantial risk of physical harm." (*Drake M.*, at pp. 766–767.)

Mother seems to concede there is substantial evidence that she has a history of substance abuse issues. She also seems to concede that, given her children's young ages, there is a presumption her substance abuse poses a risk to their safety.[3] Nevertheless, she argues the juvenile court was compelled to find she overcame that presumption. In support, mother points to evidence that she repeatedly tested negative for drugs, completed an online parenting program, enrolled in an outpatient drug program, regularly attended Narcotics Anonymous meetings, and was meeting her children's needs. Mother suggests this evidence shows she had fully resolved her substance abuse issues as of the jurisdiction hearing.

As mother points out, because she had the burden to overcome the presumption, "it is misleading to characterize the . . . issue as whether substantial evidence supports the judgment." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved of on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.) Instead, the question on appeal is whether "the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*Ibid.*)

---

[3] Although E.L. had turned seven years old a few weeks before the jurisdiction hearing, mother does not argue he was too old for the tender-years presumption to apply. Accordingly, we do not consider the issue.

While mother's efforts are commendable, the record does not compel a finding in her favor as a matter of law. Although mother tested negative for drugs several times, she was a "no show" for the last test before the jurisdiction hearing. The court could have inferred mother did not appear at the test because she knew she would have tested positive. (See *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 (*Kadence P.*) ["a missed drug test, without adequate justification, is 'properly considered the equivalent of a positive test result' "].) From this, the court reasonably could have found mother had not fully resolved her substance abuse issues as of the jurisdiction hearing, despite her participation in services.

Further supporting such a finding, the record shows mother was not entirely forthcoming about the extent of her past drug use. Mother initially told the Department she had used only "CBD" pills while pregnant. However, she reportedly told hospital staff she consumed marijuana that may have been "laced" with another drug. Although mother later admitted to the Department that she had smoked marijuana, the juvenile court reasonably could have concluded mother had yet to acknowledge fully the extent of her substance abuse, let alone address it.

The record also shows R.K. and E.L. have medical conditions that necessitate exceptional parental supervision and support. R.K. was born with genetic conditions that require she be fed through a gastrostomy tube, and E.L. had been diagnosed with autism and ADHD. Given the seriousness of these conditions, the court reasonably could have found any continued substance abuse by mother would pose a particular risk of harm to the children.

On this record, the court was not compelled to find mother had overcome the presumption that her substance abuse issues endangered her children's safety. Accordingly, we reject her argument that the juvenile court erred in taking jurisdiction over the children.

2. ***The court's disposition orders were not an abuse of discretion***

Mother and father argue the juvenile court abused its discretion by including domestic violence counseling in their case plans. Father separately argues the court abused its discretion by including in his case plan random drug testing and a parenting class.

"We review the juvenile court's disposition case plan for an abuse of discretion. 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' " (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071 (*D.P.*).) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*L.W.*, *supra*, 32 Cal.App.5th at p. 851.)

"Section 362, subdivision (d) authorizes the juvenile court to 'direct any reasonable orders to the parents' of a dependent child as the court deems necessary and proper to ensure appropriate care, supervision, custody, conduct, maintenance, and support of the child." (*D.P., supra*, 44 Cal.App.5th at p. 1071; see also § 362, subd. (a).) "The order may include 'a direction to participate in a counseling or education program,' provided that the 'program in which a parent or guardian is required to

9

participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.'" (*D.P.*, at p. 1071, quoting § 362, subd. (d).)

Nevertheless, "[t]he problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.] In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) Thus, "the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. [Citations.] Instead, the court may consider the evidence as a whole." (*Ibid.*)

a. *Domestic violence counseling*

Mother and father contend there is no evidence of ongoing domestic violence between them. Therefore, they argue, the court abused its discretion by including domestic violence counseling in their case plans.

Contrary to the parents' contentions, the record contains sufficient evidence to support a finding that they have unresolved domestic violence issues. In February 2021, mother told the police that father had grabbed her by the arm and pushed her during an argument, which caused bruising on her arm. The violence was sufficiently severe that mother requested and obtained an emergency protective order against father. Mother also told the police there had been "numerous" prior incidents of domestic violence with father. Despite this, both parents insisted to the Department there had been no domestic violence between them. The court reasonably could have determined that, until mother and father acknowledge and address their past domestic violence issues, similar incidents of violence are likely

10

to recur.  (See *In re L.O.* (2021) 67 Cal.App.5th 227, 240 [finding a risk that domestic violence would recur where the father failed to acknowledge his past violent behavior]; *In re Gabriel K. (*2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

We also reject the parents' argument that the court's order was not designed to eliminate the basis for dependency. Although the court found the parents' domestic violence alone did not warrant taking jurisdiction over the children, it reasonably could have concluded any ongoing domestic violence would present an obstacle to the resolution of mother's substance abuse issues.  (See, e.g., Stern & Oehme, *Increasing Safety for Battered Women and Their Children: Creating A Privilege for Supervised Visitation Intake Records* (2007) 41 U. Rich. L.Rev. 499, 517 [there is a "well-established link between substance abuse and domestic violence," and victims may " 'self-medicate' to deal with the abuse"].)  Given the logical connection between the parents' domestic violence and mother's substance abuse, we cannot say the court's order was arbitrary, capricious, or patently absurd. The court did not abuse its discretion by ordering the parents to participate in domestic violence counseling.

### b. *Drug testing*

Father argues the juvenile court abused its discretion by including random drug testing in his case plan.  According to father, testing was not warranted because there was "neither an indication nor concern" that he was using drugs.

Contrary to father's suggestions, the record contains sufficient evidence to support a finding that he has unresolved substance abuse issues.  Father denied using drugs, but he refused the Department's request that he submit to a drug test.

11

More importantly, father failed to comply with the court's order that he drug test as a condition of the children being released to his custody. The court reasonably could have inferred father did not appear for the tests because he knew he would have tested positive. (See *Kadence P., supra*, 241 Cal.App.4th at p. 1384.)

The court also reasonably could have determined an order requiring father to drug test would help eliminate the conditions that led to dependency. Mother told the Department she had used drugs with father in the past, and she suggested it was the basis for the start of their relationship. Given this history, the court reasonably could have concluded that, if father continues to use drugs, it might hinder the resolution of mother's substance abuse issues.

Father's reliance on *In re Sergio C.* (1999) 70 Cal.App.4th 957 and *In re Basilio T.* (1992) 4 Cal.App.4th 155, is misplaced. In *Sergio C.*, the court held it was an abuse of discretion to require drug testing where the parent denied all involvement with drugs and cooperated fully with the juvenile court's orders. (*Sergio C.*, at p. 960.) In *Basilio T.,* the court held it was an abuse of discretion to include a substance abuse component in the parents' case plans based solely on the mother's somewhat unusual behavior and obsession with a "fortune-making invention." (*Basilio T.*, at pp. 172–173.) Here, the record contains far more support for the court's order requiring father to submit to drug testing. In contrast to *Sergio C.* and *Basilio T.*, there is substantial evidence that father has a history of substance use. Moreover, unlike the parents in those cases, father refused to comply with the court's order that he drug test, which indicates his substance use is ongoing.

Father's reliance on *Drake M., supra*, 211 Cal.App.4th 754, is similarly misplaced. In that case, the juvenile court took jurisdiction over a child based on the parents' substance abuse issues and the mother's mental illness. (See *id.* at p. 770.) A different panel of this court reversed the jurisdictional findings concerning the father because there was no evidence he had substance abuse issues, such as recurrent substance-related legal problems. (*Id.* at pp. 767–768, 771.) This court also held it was an abuse of discretion to require the father to submit to drug testing because, under the circumstances, the order could not reasonably be designed to eliminate the conditions that led to dependency. (*Id.* at pp. 669–770.)

In contrast to *Drake M.*, the record in this case supports a finding that father has substance abuse issues. Father has a relatively recent criminal conviction related to a controlled substance, and his repeated refusal to drug test indicates his substance use is ongoing. There is also a logical connection between mother's and father's drug use, such that requiring father to address his substance abuse issues reasonably could be designed to eliminate the basis for dependency. Under these circumstances, we cannot say the order was an abuse of discretion.

c. *Parenting classes*

Relying on *In re Jasmin C.* (2003) 106 Cal.App.4th 177 (*Jasmin C.*), father argues the juvenile court abused its discretion by including parenting classes in his case plan.

In *Jasmin C.*, the juvenile court ordered the mother to participate in parenting classes, despite the fact she was nonoffending and had not engaged in any inappropriate behavior. (*Jasmin C., supra*, 106 Cal.App.4th at p. 181.) The Court of

13

Appeal held the order was an abuse of discretion because it "apparently was based on a rote assumption that mother could not be an effective single parent without parenting classes, something belied by common sense and experience in 21st-century America." (*Id*. at pp. 181–182.) The court explained the " 'unnecessary responsibility of attending a class adds a great deal of stress to an already tragic situation,' " and would place a strain on the family. (*Id*. at p. 182.)

Unlike in *Jasmin C.,* the record in this case supports a finding that father engaged in inappropriate behavior. As summarized above, there is sufficient evidence from which the court reasonably could have found father has unresolved domestic violence and substance abuse issues, both of which might negatively affect his ability to care for his children. Although father's inappropriate behavior did not form the basis for dependency, the court nevertheless could have found father's participation in parenting classes would be in the children's best interests.

**DISPOSITION**

We affirm the jurisdictional findings and disposition orders.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

ADAMS, J.