Filed 6/7/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| In re A.F. et al., Persons Coming Under the Juvenile Court Law. | |
|---|---|
| SAN FRANCISCO HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. M.S., Defendant and Appellant. | A168850 (San Francisco City & County Super. Ct. Nos. JD23-3211, JD23-3211A, JD23-3211B) |

In July 2023, the San Francisco Human Services Agency (Agency) filed a petition alleging three children came within Welfare and Institutions Code section 300. (Undesignated statutory references are to this code.) The juvenile court exercised jurisdiction, sustained the allegations in part, released the children to M.S. (mother), and ordered the family to participate in therapy. Mother appeals. We affirm. Among other things, we hold an alleged father constitutes a "parent" within the meaning of section 300, subdivision (b)(1).

## BACKGROUND

The Agency's petition concerned M.S.'s sons — ages 13 and 10 — and daughter — 16 months old. (All ages at the time of the petition.) The Agency alleged the toddler had suffered, or there was a substantial risk she would

1

suffer, serious physical harm inflicted nonaccidentally by P.F., her alleged father. It also alleged the children were at substantial risk of suffering serious physical or emotional harm due to P.F.'s domestic violence towards mother, and that P.F. had substance abuse issues impeding his ability to appropriately care for the children.

The Agency alleged mother admitted to letting P.F. stay in her home beginning July 2, 2023, despite a three-year criminal restraining order — listing her and the boys as protected parties — issued after he hit and choked her on May 18, 2021. (Unless otherwise specified, all events occurred in 2023.) On July 4, the police responded to a report of P.F. "violating the . . . order." P.F. was intoxicated and holding the toddler. The eldest son asked P.F. to give her to him, but P.F. refused. The son began punching him, and P.F. used the girl to deflect the blows. P.F. admitted he'd inhaled an unspecified white powder before coming home that day. Mother reported P.F. appeared fine until he became intoxicated; the eldest son reported P.F. was a " 'tweaker' " who got " 'scared and paranoid' " when not sober.

In its detention report, the Agency recommended the juvenile court remove the children from P.F.'s custody and temporarily place them with mother. It noted P.F. referred to the children as his own, and they recognized him as their father. It also stated mother identified P.F. as the children's biological father and that, on July 2, P.F. was released from jail. That day, mother let him into the home. One of the boys reported P.F. had been in the home since July 2, and the family went to Chuck E. Cheese and the beach together. Mother and the boys' version of the July 4 incident tracked the Agency's description in the petition. P.F. did not appear at the detention hearing, but the court appointed counsel for him. The court issued a temporary restraining order protecting mother and the children.

2

Before the jurisdiction and disposition hearing, the Agency submitted a dispositional report recommending the juvenile court sustain the petition and provide family maintenance services to mother. It contained more information from social workers. Mother stated she allowed P.F. into the home because the children missed him and blamed her for keeping him away. Despite his violence against her, mother stated she and P.F. remained best friends, and he should remain in the children's lives. She reported P.F. was loving when sober, but violent when drunk. Social workers concluded her desire for the children to have a relationship with P.F. put them at risk. Despite the Agency's recommendations, mother did not want to participate in domestic violence services. The Agency concluded she needed support to set boundaries with P.F., and the children would benefit from therapeutic support.

The report also detailed the family's history with domestic violence and the Agency, and it described P.F.'s criminal history. A substantiated referral showed he choked and hit mother in June 2021 while the children were present. Another referral stated he abused one of the boys in November 2022. In February 2023, the Agency received two more referrals — one expressing concern about one of the boy's suddenly changing behaviors and mother appearing overwhelmed, and another stating P.F. left the home and family without financial resources or a car. He had four DUI convictions — one in 2003 and 2006, and two in 2011 — and a 2004 conviction for possessing controlled substances.

In September 2023, the juvenile court held the contested jurisdiction and disposition hearing. P.F. did not appear. (The Agency was unable to locate him despite its diligent efforts.) The parties agreed to admit the detention and dispositional reports, and the Agency amended the petition to

3

strike the allegation that P.F. nonaccidentally inflicted harm to the girl. It also amended the remaining allegations to state mother failed to protect the children by allowing P.F. in the home despite the criminal protective order protecting her and the boys.

Mother testified P.F. was the children's father. She was aware of his release from jail but did not see him until he "appeared" near her home the next day. She ignored him, but he returned the following day — July 4. Her younger son let P.F. in when she wasn't home; when she arrived, P.F. didn't look sober. Mother saw P.F. grab "the baby" and heard their eldest son tell P.F. to give him the toddler — mother went to the bathroom, and she heard "chaos" when she returned. She denied P.F. had been in the home since July 2 and that he went to the beach or Chuck E. Cheese with the family.

Ultimately, the juvenile court struck allegations pertaining to mother but found true the allegations against P.F. Specifically, it found the children were at "substantial risk of suffering serious physical and/or emotional harm due to the domestic violence perpetrated by the alleged father towards the mother." It also found police responded to mother's home on July 4 because P.F. violated the criminal restraining order, held the toddler while intoxicated, refused to put her down after his son asked him to, and used her as a shield when his son hit him. It also found P.F. was previously arrested for choking and hitting mother, and domestic violence had been increasing in the home — "red flags of potential lethality." Lastly, it found P.F. had substance abuse issues which impeded his ability to care for the children, he admitted sniffing a white substance on July 4, and his family reported he had substance abuse issues.

After making its findings, the juvenile court denied mother's request to dismiss the case, declared the children dependents of the court, kept the

4

children in mother's home, and ordered mother and the children to participate in family therapy. In issuing its order, the court expressed concern with P.F.'s escalating pattern of domestic violence. It also sought to help the children understand the seriousness of domestic violence and to address their tendency to blame mother. The court set a review hearing in six months.

## DISCUSSION

Mother first contends the juvenile court erred by sustaining the petition and exercising jurisdiction. Specifically, she argues an *alleged father* is not a parent or guardian within the meaning of section 300, subdivision (b)(1); since the founded allegations concerned P.F. — an alleged father — the court had no jurisdiction. For its part, the Agency contends that nothing in section 300 provides an alleged father is not a parent. The Agency has the better argument.[1]

The purpose of dependency is " 'to provide maximum safety and protection for children who are currently being . . . abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm.' " (*In re N.R.* (2023) 15 Cal.5th 520, 552.) Section 300, subdivision (b), in relevant part, provides a child comes within the juvenile court's jurisdiction when they have suffered, or there is a substantial risk they will suffer, serious physical harm or illness as a result of the failure or inability of a *parent or legal guardian* to

---

[1] At the Agency's request, we take judicial notice of the juvenile court's minute order, dated January 8, 2024, in which P.F. was elevated from alleged to presumed father status. (Evid. Code, §§ 452, subd. (d), 459, subds. (a), (b); *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 881–882.) Thus, even if mother prevailed on this argument, at most the parties would presumably return to square one with an amended petition like the one sustained here.

supervise or protect them, or the inability of the parent to provide regular care for them due to the parent's substance abuse. (§ 300, subd. (b)(1).)

Mother contends an alleged father is not a "parent" within the meaning of section 300, subdivision (b)(1), and P.F.'s abuse of his children cannot confer jurisdiction. We are unpersuaded. The California Supreme Court has repeatedly declined to read implicit limitations into the exercise of dependency jurisdiction (e.g., *In re N.R.*, *supra*, 15 Cal.5th at pp. 552–553; *In re Ethan C.* (2012) 54 Cal.4th 610, 640), and mother does not persuade us to follow a different course here. Instead, she relies on cases addressing *the rights* of alleged fathers during dependency proceedings. (E.g., *In re Emily R.* (2000) 80 Cal.App.4th 1344, 1354–1355 [alleged father had no right to reunification services]; *In re Joseph G.* (2000) 83 Cal.App.4th 712, 715 [alleged father who was not party of record had no right to appeal termination of parental rights].) Those cases are inapposite. They did not purport to hold or otherwise suggest an alleged father's abuse against his children cannot confer *jurisdiction* under section 300, or that an alleged father is not a "parent" within the meaning of that statute. (See *Emily R.*, at pp. 1354–1355; *Joseph G.*, at p. 715.) And it makes "little sense" to make that logical leap. (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1286.) When determining whether to exercise jurisdiction under section 300, we see no basis to distinguish between alleged, presumed, or biological parents. (*H.R.*, at p. 1286 ["alleged father, by definition, means the possibility exists that the man is the biological father of the child".) Moreover, given the evidence that everyone considered P.F. to be the children's father — including the children, mother, and P.F. himself — we cannot conclude he is not a parent for purposes of section 300, subdivision (b)(1).

Mother next argues substantial evidence does not support the juvenile court's declaration of dependency.[2]  We disagree.  We review challenges to a juvenile court's dispositional findings for substantial evidence.  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)  We " ' "draw all reasonable inferences from the evidence to support the findings and orders of the dependency court." ' "  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  " ' "We review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' "  (*Id.* at p. 773)  " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' "  (*Ibid.*)

Ample evidence supported the juvenile court's finding that the children fell within section 300, subdivision (b)(1).  Mother testified P.F. was the children's father.  (*In re H.R.*, *supra*, 245 Cal.App.4th at pp. 1284–1285 [mother's credible testimony that man is father of her child is substantial evidence of paternity].)  Moreover, P.F. referred to the children as his own, and the children recognized him as such.  He stated he came home intoxicated after sniffing a white powder, and his family members stated he used his baby as a shield to deflect blows from his eldest son.  The family had a history of domestic violence, and P.F. had a history of substance abuse —

[2] Mother also argues a disposition hearing should not have occurred but merely repeats the same jurisdictional arguments we already rejected. She also contends substantial evidence does not support the juvenile court's dispositional orders, but she does not challenge any of its factual findings other than its declaration of dependency.  For that reason, we review the declaration of dependency for substantial evidence and subsequently address the dispositional orders for abuse of discretion.  (*In re K.T.* (2020) 49 Cal.App.5th 20, 25 [reviewing findings on which dispositional orders are based for substantial evidence, and dispositional orders for abuse of discretion].)

including criminal convictions.  The court could rely on these facts when finding the children had suffered or were at risk of suffering physical harm from P.F.  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193–194 [evidence of continuing violence between parents, where at least one incident occurred in presence of minors, sufficient for jurisdictional finding]; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 [physical violence can support jurisdictional finding where violence is ongoing or likely to continue and places child at risk of physical harm].)

Lastly, mother contends the juvenile court abused its discretion by not granting her request to dismiss the case at disposition and instead ordering family therapy.  She argues the orders did not protect the children, resolve the problems that led to the petition, and only pertained to her and her children when she was the " 'nonoffending' " parent.  No abuse of discretion appears.

Juvenile courts have "wide latitude" in formulating reasonable dispositional orders for the care, custody, support, and well-being of dependents subject to their jurisdiction.  (*In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180.)  The court is authorized to "require a nonoffending parent to comply with orders pertaining to a child once the court has accepted jurisdiction." (*In re K.T.*, *supra*, 49 Cal.App.5th at p. 25.)  The problem the court is addressing need not be described in the petition.  (*In re S.F.* (2023) 91 Cal.App.5th 696, 725.)  There need only be a nexus between the services ordered and the conditions that gave rise to the finding that the children come within section 300.  (*S.F.*, at pp. 725–726; see, e.g., *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008 [juvenile court did not abuse discretion in ordering parent to participate in alcohol testing even though alcohol problems did not cause dependency jurisdiction].)  Nevertheless, the court's orders

must be " 'designed to eliminate [the] conditions that led to the court's . . . finding' " that the child is a person described by section 300. (*In re D.M.* (2015) 242 Cal.App.4th 634, 639.)  We review dispositional orders and orders denying a request for dismissal for abuse of discretion.  (*In re K.S.* (2016) 244 Cal.App.4th 327, 340; *In re L.W.* (2019) 32 Cal.App.5th 840, 851.) A court abuses its discretion "if its determination is arbitrary, capricious or patently absurd." (*L.W.*, at p. 851.)

The juvenile court did not abuse its discretion.  It found the children at risk of harm due to P.F.'s domestic violence, thereby warranting retention of the case and the therapy orders.  (*In re T.V.* (2013) 217 Cal.App.4th 126, 134 [exposing children to domestic violence creates substantial risk of harm].) The court found P.F. previously strangled mother, and domestic violence had been increasing in the home.  Ample evidence also supports an implied finding that mother did not understand the harm P.F.'s actions inflicted upon the children.  (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 [denial a factor in determining whether persons are likely to modify their behavior without court supervision].)  Despite P.F.'s history of violence, mother stated the two remained best friends, it was important he remain in the children's lives, and she did not want domestic violence services.  Social workers concluded her desire for the children to have a relationship with P.F. put them at risk.  On this record, we conclude the court reasonably concluded it should retain the case and order therapy to reduce the risk of domestic violence within the family.  (*T.V.*, at p. 134.)  Contrary to mother's arguments, her culpability is irrelevant to this conclusion.  (*In re K.T.*, *supra*, 49 Cal.App.5th at p. 25; *In re S.F.*, *supra*, 91 Cal.App.5th at p. 725 [" 'there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order' "].)

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
FUJISAKI, Acting P. J.


_____
PETROU, J.


A168850

Trial Court: San Francisco City and County Superior Court

Trial Judge: Hon. Susan M. Breall

Counsel:

Mara L. Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

David Chiu, City Attorney, Kimiko Burton and Elizabeth McDonald Muniz, Deputy City Attorneys, for Plaintiff and Respondent.